IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MONTANA CAMO, INC., ) <br> CLAY MATHEWS, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> CABELA'S, INC., CABELAS.COM, ) <br> INC., and CABELA'S RETAIL, INC., ) <br> ) <br>     Defendants. ) | Cause No.: CV-08-71-BLG-RFC <br><br> ORDER GRANTING <br> CABELA'S MOTION FOR <br> PARTIAL SUMMARY <br> JUDGMENT DISMISSING <br> TRADE SECRETS CLAIM |

**I.   INTRODUCTION**

Plaintiffs[1] Montana Camo, Inc. ("MCI") and Clay Matthews allege Cabela's used improper means to misappropriate its supply chain and business information to produce its own line of camouflage clothing to compete with MCI and that this conduct harmed it in violation of Montana's Uniform Trade Secrets Act, Mont. Code Ann. § 30-14-401 *et seq.* *Amended Complaint ¶ 60, Doc. 86.*[2] MCI further

---

[1] Throughout this Order, MCI or Montana Camo is used to refer to both Plaintiffs.

[2] Montana Camo's Trade Secrets Act claims as pleaded in the initial Complaint (*Doc. 1*) are identical to those in the Amended Complaint (*Doc. 86*).

1

alleges this misconduct was willful and malicious entitling it to punitive damages. *Id.* at ¶ 61.

Presently before the Court is Cabela's Motion for Summary Judgment Dismissing Trade Secret Claim (*Doc. 75*). Cabela's argues it should be granted summary judgment as to Montana Camo's misappropriation of trade secrets claims for three reasons: (1) the alleged trade secrets were generally known and readily ascertainable; (2) there is no admissible evidence to show that the alleged trade secrets were misappropriated; and (3) the claims are barred by the statute of limitations. Because the Court concludes the motion must be granted as to some trade secrets the first reasons and as to others for the second reason, there is no need to address the statute of limitations.

## II.  ANALYSIS

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the

governing law. *Anderson, v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57. Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* The court should not weigh the evidence and determine the truth of the matter, but determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.

### B.   THE TRADE SECRETS ACT

The Uniform Trade Secrets Act ("the Act") creates a cause of action for the misappropriation of trade secrets. Mont. Code. Ann. § 30-14-404. The Act defines "misappropriation" and "trade secret" as follows:

(2) "Misappropriation" means:

> (a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

> (b) disclosure or use of a trade secret of another without express or implied consent by a person who:
>
>> (i) used improper means to acquire knowledge of the trade secret;
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:
>>
>>> (A) derived from or through a person who had used improper means to acquire it;
>>>
>>> (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>>
>>> (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>>
>> (iii) before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.
>
> (4) "Trade secret" means information or computer software, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
>> (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>>
>> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mont. Code Ann. § 30-14-402(2) & (4).

### C.   CABELA'S MUST BE GRANTED SUMMARY JUDGMENT BECAUSE MCI'S ALLEGED TRADE SECRETS ARE EITHER GENERALLY KNOWN OR READILY ASCERTAINABLE, OR THERE IS NO ADMISSIBLE EVIDENCE OF MISAPPROPRIATION

As an initial matter, the Court notes that even the Amended Complaint, filed some 16 months after the initial complaint, is severely lacking in particularity, alleging only that MCI has a trade secrets in its "supply chain and other business information." *Doc. 86, ¶ 59.* In any event, Cabela's claims it has discerned the following alleged trade secrets from Montana Camo's interrogatory answers, admissions, an deposition testimony:

   1. **Montana Camo's sources and suppliers for fabric and garments:** MCI alleges it owns a trade secret to use Jest Textiles, Brittney Dye, Royal Carolina, Fine-Tex, RothTec and Haines to supply their fabric and garments and to convert and print camouflage patterns on them;

   2. **Technical information concerning camo patterns and refinements to printing processes developed by Montana Camo:** MCI alleges it owns a trade secret that consists of: using Adobe to create patterns on print screens; making sure print screens do not overlap; fine-tuning the screen length and width; sizing and positioning final images; selecting the type of screen and ink; and, selecting the proper roller sequence and roller speed;

   3. **Montana Camo technical information in the possession of converters, print engravers, and print facilities (*e.g.* Jest Textiles, Fine Tex, Roth-Tech, and Royal Carolina) created for the purpose of making Montana Camo products:** MCI alleges it owns a trade secret that consists of giving the information described in alleged Trade Secret 2 to the printers and engravers identified in alleged Trade Secret

1;

4. **Montana Camo's customer and/or dealer information:** MCI alleges its customer and/or dealer list is a trade secret;

5. **Montana Camo's cost, pricing, and related marketing information:** MCI alleges it owns a trade secret on cost of camouflage goods, price of fabric, and profit margin as well as marketing strategies for selling camouflage products.

6. **Additional concepts:** MCI alleges it has a trade secret in two dimensional camouflage patters; muted colors in the patterns; placement of darker items in the foreground and lighter dissimilar items in the background of the patterns; and vertical representations in the patterns.

Montana Camo does not dispute this characterization of its alleged trade secrets. They are addressed in turn.

    **1.**    **TRADE SECRET 1: MONTANA CAMO'S SUPPLIERS OF FABRIC AND GARMENTS**

Cabela's argues it is entitled to judgment as a matter of law that MCI's suppliers were generally known or readily ascertainable. Under the plain language of the Uniform Trade Secrets Act, MCI's alleged trade secrets must "derive[] independent economic value from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use." Mont. Code Ann. § 30-14-402(4).

While the identity of a supplier can be a trade secret, *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1108 (D.Mont. 2001), there can be no

6

misappropriation action if the trade secret is readily ascertainable by people who seek them out. *Billmayer v. City of Kalispell,* 160 P.3d 869, 871 (Mont. 2007). Here, Cabela's cites Clay Matthews' deposition testimony stating that he found the suppliers Jest Textiles, Brittney Dye, Royal Carolina, and Fine Tex at the library in the Thomas Registry, and that he found Haines through networking a trade show. *Doc. 77,* Cabela's Statement of Undisputed Facts ("SUF") ¶¶ 11-13. Accordingly, Cabela's argues that since anyone could have discovered these suppliers using the same methods Matthews used, MCI's trade secret claim as to its suppliers fails at the outset because MCI cannot prove its suppliers are a trade secret.

Montana Camo's only counter-argument is that because Cabela's sought a protective order for its confidential business information, it is disingenuous for them to assert Montana Camo's alleged trade secrets cannot be protected as trade secrets. But just because a party claims something is confidential does not mean it is a trade secret. Trade secrets have a statutory definition that excludes information that is generally known or readily ascertainable by proper means. Since the evidence is undisputed that these suppliers were readily ascertainable to people in the industry, MCI cannot seek trade status protection for them.

In addition, even if these suppliers were trade secrets, Cabela's argues it still must be granted summary judgment because there is no evidence that it

7

misappropriated MCI's trade secret in these suppliers. First, the undisputed evidence is that Cabela's has not done business with Brittney Dye, Fine-Tex, RothTec, or Haines. SUF, ¶ 25. Cabela's could not have misappropriated MCI's trade secret in the use of these businesses if they did not use them.

With respect to Jest Textiles, Cabela's has been using it since the early 1990's, before MCI's existence. SUF, ¶ 24. As such, Cabela's could not have misappropriated any trade secret MCI had in using Jest Textiles.

That leaves Royal Carolina. Although Cabela's argues it also did not "directly" do business with Royal Carolina, Clay Matthews saw Open Country at Royal Carolina's factory, indicating that it at least indirectly did business with it. SGI, ¶¶ 83-91. Accordingly, even if MCI can claim trade secret protection for the use of a supplier that it found in a publicly available document, Royal Carolina is the only supplier that Cabela's could have misappropriated.

### 2.  TRADE SECRETS 2 & 3: "TECHNICAL INFORMATION CONCERNING CAMO PATTERNS AND REFINEMENTS TO PRINTING PROCESSES DEVELOPED BY MONTANA CAMO"

Montana Camo's second alleged trade secret "is the use of Adobe to create patterns on print screens; making sure print screens do not overlap; fine-tuning the screen length and width; sizing and positioning the final images; selecting the type of screen and ink; and selecting the proper roller sequence and roller speed." SUF,

¶ 5.  On account of Matthews' testimony that the technical information in alleged Trade Secret 2 is the same as that in alleged Trade Secret 3, except that it was possessed by Montana Camo's converters, print engravers, and printers, SUF ¶ 16, they will be analyzed together.

In support of its claim that Montana Camo's technical information cannot be trade secrets because they were generally known in the camouflage industry long before Montana Camo's existence, Cabela's cites a wealth of deposition testimony, declarations, and patents.  *See* SUF, ¶¶26 - 34.  Montana Camo submits no contrary evidence, except that print screens, which the Court understands to be the end product of Montana Camo's "technical information", are confidential and proprietary.  SGI, ¶ 146.  Montana Camo, however, has not alleged that Cabela's misappropriated its print screens or that Cabela's created camouflage patterns that were identical to MCI's.

Further, Cabela's itself does not participate in the technical aspects of printing and engraving camouflage; it leaves that to its printers and engravers.  SUF, ¶ 43.  Accordingly, Cabela's could not have misappropriated Montana Camo's "technical information concerning camo patterns and refinements to printing processes."

### 3. TRADE SECRET 4: MONTANA CAMO'S CUSTOMER AND DEALER INFORMATION

As noted, a trade secret must "derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." Mont. Code Ann. § 30-14-402(4)(a). A trade secret must also be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.*; *Billmayer,* 160 P.3d at 245. In this case, MCI's customer and dealer information has been listed on its website since 2004. SUF, ¶ 37. Since MCI has made no effort to maintain secrecy of its customer and dealer information, it is not a trade secret.

### 4. TRADE SECRET 5: MONTANA CAMO'S COST, PRICING, AND RELATED MARKETING INFORMATION

Cabela's claims MCI's discovery responses reveal that MCI claims to own a trade secret as to the cost of camouflage goods, price of fabric, and profit margin, as well as marketing strategies for selling camouflage products. As noted, MCI has not disputed this characterization, but neither has it provided further detail as to what these trade secrets actually are. It is therefore doubtful that MCI has sufficiently identified a trade secret in the nebulous concepts of "cost, pricing, and related marketing information." *Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d

10

1161, 1164 (9th Cir. 1998)(the proponent of a misappropriation claim must identify its trade secrets and prove that they exist).

Nor has MCI rebutted Cabela's declaration that cost and pricing information is easily ascertainable in the camouflage industry by obtaining quotes from printers, engravers, mills, and manufacturers. SUF, ¶ 38. With respect to its marketing information and strategies, MCI has not stated which "marketing strategies" it has a trade secret in.

In addition, MCI has submitted no summary judgment type evidence rebutting Cabela's assertion that there is no evidence that it used or otherwise misappropriated these trade secrets. MCI's response brief and accompanying statement of genuine issues contain a lot of allegations, but the allegations are supported only by narrative interrogatory responses. *See SGI, ¶¶ 178-194.* "When the moving party demonstrates the absence of a factual issue, the nonmoving party may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *See In re Barboza,* 545 F.3d at 707. Even assuming MCI has a trade secret in its undefined cost, pricing and marketing information, self-serving interrogatory responses, unsupported by other evidence, cannot create a genuine issue of fact as to misappropriation.

11

### 5. TRADE SECRET 6: "ADDITIONAL CONCEPTS"

Finally, assuming MCI can go forward with alleged Trade Secret 6 when the Amended Complaint only gives Cabela's notice that MCI had a trade secret in its "supply chain and other business information," Cabela's submits evidence that these concepts were referenced in U.S. patents that existed prior to MCI's existence. SUF, ¶¶ 40, 41. As noted, trade secret protection is not available for concepts that are readily attainable by proper means. Mont. Code. Ann. § 30-14-404(4)(a). Again, MCI does not respond to this argument and summary judgment in favor of Cabela's is appropriate.

### III. ORDER

For those reasons, **IT IS HEREBY ORDERED** that Cabela's Motion for Partial Summary Judgment Dismissing Trade Secret Claims (Doc. 75) is **GRANTED.**

Dated this 11th day of June 2010.

>*/s/ Richard F. Cebull*_____
> Richard F. Cebull
> United States District Judge